UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ISABEL TERESA FERNANDEZ JENKINS, as :
Next of kin of MYKEL D. JENKINS (Deceased), :
                                              :
            Plaintiff,                        :
                                              :
vs.                                           :          Civil Action No. 1:22-cv-69
                                              :
CITY OF CHATTANOOGA, CHATTANOOGA              :
POLICE DEPARTMENT, JOHN DOE 1, JOHN           :
DOE 2, JOHN DOE 3, and JOHN DOE 4, in their   :
Official capacities as agents for the Chattanooga :
Police Department,                            :
                                              :
            Defendants.                       :

**MEMORANDUM OF LAW IN SUPPORT OF**
**CITY OF CHATTANOOGA, CHATTANOOGA POLICE DEPARTMENT, AND JOHN**
**DOE'S 1, 2, 3, AND 4 MOTION FOR SUMMARY JUDGMENT**

Come now Defendants, City of Chattanooga, Chattanooga Police Department, and John

Doe's 1, 2, 3 and 4's (hereinafter, "City Defendants"), by and through counsel, and in support of

their Motion for Summary Judgment would show unto the Court as follows:

**STATEMENT OF THE CASE**

This is a civil rights case arising from the death of Mykel D. Jenkins, (hereinafter,

"Jenkins") on March 19, 2021. His mother, Isabel Teresa Fernandez Jenkins filed a lawsuit naming

the City of Chattanooga, the Chattanooga Police Department and John Does 1-4. The Plaintiff

alleges that police officers used excessive force when they were called to Ms. Jenkins' residence

on March 19, 2021. (Complaint ¶31). Plaintiff also alleges that the City of Chattanooga

"maintained a policy, custom, or practice of deliberate indifference to the hiring, training,

supervision, or discipline of police officers." (Complaint ¶ 35). Plaintiff further asserted allegations

of negligence and assault and battery. (Complaint ¶38, 50) Lastly, the Plaintiff asserted a wrongful

1

death claim pursuant to Tenn. Code Ann. §20-5-106. (Complaint ¶55).

Plaintiff filed her Complaint on March 18, 2022. City Defendants filed their Answer to the Complaint denying all of Plaintiff's allegations on April 14, 2022. (Answer, Court file No. 7). The Court entered a Scheduling Order on July 7, 2022 setting the deadline for dispositive motions for September 11, 2023. (Scheduling Order, Court File No. 16). Accordingly, this Motion is timely filed. This Case is set for trial on January 8, 2024. (Scheduling Order, Court File No. 16).

## STATEMENT OF THE FACTS

In support of this motion, Defendants have filed supporting affidavits of Emanuel Kapelsohn, Executive Chief Glenn Scruggs, Ronald Zirk, Jonathan Chambers, Glen E. Farr, Steven Charles Cogswell, and portions of the deposition of Isabel Teresa Fernandez Jenkins. City Defendants have filed a statement of undisputed facts in connection with this Motion for Summary Judgment and Memorandum of Law which are incorporated herein by reference.

On March 19, 2021, Chattanooga Police officers responded to Ms. Isabel Jenkins residence at 3624 Premium Drive, Chattanooga, Tennessee. (Complaint ¶14). The night prior, Mykel Jenkins spent the night at her home. (Jenkins Depo. P. 80, Ll. 20-24). Despite being arrested on March 2, 2021 for punching through the wall and destroying Ms. Jenkins property, Mykel Jenkins returned to Ms. Jenkins' residence on March 19, 2021. (Jenkins Depo P. 7, Ll. 10-23; P. 74, Ll. 8-16; P. 76, Ll. 3-8). Ms. Jenkins testified that she called the police to take Mykel Jenkins to the hospital. Jenkins Depo. P. 83, Ll. 19-23).

On March 19, 2021, according to Ms. Jenkins, was going "back and forth," talking to himself, screaming and hollering and would not sit down. (Jenkins Depo. P. 82, Ll. 12-25). Officers engaged with Mykel Jenkins by telling him they were trying to get him some help. (See Axon Body Cam X6039A40D 10:05-11:24). Ms. Jenkins also informed officers that Mykel

Jenkins was not supposed to be at her residence due to a Court order and that Mykel Jenkins stole her documentation so that she cannot go to Court. (Axon_Body_3_Video X6039A40D 16:00-17:48). Despite claiming ignorance about Mykel Jenkins' drug habits in her deposition (Jenkins Depo P. 34, Ll. 1-6; P. 49, Ll. 20-21; P. 63, Ll. 9-10; P. 67, Ll. 15-21), on Officers' body cam, Ms Jenkins tells police officers that Mykel Jenkins is on drugs and has done cocaine with friends before. (Axon_Body_3_Video X6039A40D 16:00-17:48). She also tells officers on March 19, 2021 that "you can tell he's taken something." (Axon_Body_3_Video X6039A40D 16:00-17:48).

Mykel Jenkins picks up a sharp object and despite repeated instructions to put the items in his hand down, he refuses to do so. (Axon_Body_3_Video X6039A40D 21:39-23:20). Mykel Jenkins then approaches Officer Martin with the sharp object in his hands and tells him that "I'm gonna get you. Left eye or Right eye I'll get them both." (Axon_Body_3_Video X6039A7V1 12:06-23:29). Officer Blumenberg eventually deploys his taser on Mykel Jenkins after he does not comply with several more repeated commands to put down the items in his hands. (Axon_Body_3_Video X6039A40D 23:50-24:48).

Ms. Isabel Jenkins told Hamilton County Deputies after this incident that she did not see anything. (Hamilton County Jenkins Interview 12:30:06-12:33:57). However, Ms. Jenkins testified in her deposition that she saw Mykel Jenkins jump on the bed and be hit with the taser. (Jenkins Depo. P. 90, Ll. 11-25).

After Mykel Jenkins was tased, he approached Officer Martin and Officer Martin delivered a front kick to Mykel Jenkins and Mykel Jenkins fell on the bed. (Axon_Body_3_Video X6039A40D 23:50-24.48). Mykel Jenkins started to get up and approached Officer Blumenberg, who again instructed Mykel Jenkins to put down the sharp object and other items in his hands. (Axon_Body_3_Video X6039A40D 23:50-24.48). Mykel Jenkins did not comply with Officer

Blumenberg's instructions and continued to approach, so Officer Blumenberg increased the amount of force and shot Mykel Jenkins multiple times with his service weapon. (Axon_Body_3_Video X6039A40D 23:50-24.48). Ms. Isabel Jenkins admitted to not seeing the shooting in her deposition (Jenkins Depo. P. 89 Lines 17-24). At the time of his death, Mykel Jenkins had 2100/ng/mL of methamphetamine, 64ng/mL of amphetamine in his system at the time of his death. (Cogswell Affidavit ¶5).

The actions of Officer Blumenberg on the use of deadly force was reviewed by his chain of command. (See Scruggs Affidavit ¶13). After review by his chain of command, it was concluded that Officer Blumenberg's actions were within policy of the Chattanooga Police Department in ADM-05. (See Scruggs Affidavit ¶13).

## STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003). In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943 (6th Cir. 1990); and *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The court cannot weigh the evidence, determine the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349

F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

The judge's function at the point of summary judgment is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248, 249; *Nat'l Satellite Sports*, 253 F.3d at 907. While the court draws all reasonable factual inferences in the light most favorable to the non-moving party, it may grant summary judgment if the record taken as a whole could not lead a rational, objective jury to find for the non-moving party. *Matsushita*, 475 U.S. at 587; *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson,* 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.,* 51 F.3d 1277, 1280 (6th Cir. 1995); and *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

## LAW AND ARGUMENT

**1.      JOHN DOE'S 1-4 SHOULD BE DISMISSED BECAUSE OF PLAINTIFF'S FAILURE TO NAME AND SERVE JOHN DOE'S 1-4 WITHIN THE ONE-YEAR STATUTE OF LIMITATIONS.**

In *Nicholson v. City of Chattanooga, Tenn.*, No. 1:04-CV-168, 2005 WL 2657001 (E.D. Tenn. Oct. 18, 2005), this court dismissed claims against unnamed John Does where: (1) the plaintiff failed to move to timely amend her complaint to identify the John Doe defendants; (2)

plaintiff failed to identify the John Doe defendants within the appropriate statute of limitations; and, (3) the John Doe defendants were not timely served with process within 120 days of plaintiff filed her complaint. *Nicholson* at *11.

Plaintiff has named "John Doe 1, John Doe 2, John Doe 3, John Doe 4" in their official capacities and as additional individual defendants in this case since the initial filing of the complaint on March 18, 2022. The record does not reflect that Plaintiff's complaint has ever been amended to name John Does 1-4 nor does the record reflect that any John Doe has ever been served with a copy of the summons and complaint. The affidavit of service filed in this matter, shows that the initial complaint was served on a Sgt. April Bolton with the Chattanooga Police Department, but no individual officers were ever correctly named after discovery or individually served. The answer of Defendants filed on April 14, 2022 asserted the defense of insufficient service of process and lack of personal jurisdiction on John Doe(s) 1-4. Doc. 7. No amended complaint naming the John Doe(s) 1-4 ever occurred despite identifying discovery response and depositions taken by Plaintiff in this case.

All the conditions that were present in *Nicholson* are present in this case with respect to John Does 1-4; consequently, John Does (s) 1-4 should be dismissed at this time in their official and individual capacities because of Plaintiff's failure to properly make those named officers parties to this action within the time limits established under Rule 4 (m) of the *Federal Rules of Civil Procedure*. *Williams v. Tomaszcyk*, 2023 U.S. Dist. LEXIS 139727 (W.D. MI July 6, 2023).

The statute of limitations to bring any §1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the §1983 claim arises. *Nelkin v. Knox County, Tennessee,* No. 3:14-CV-TAV-CCS, 2015 WL 2448320 at *9 (E.D. Tenn. May 20, 2015) (citing *Eidson v. State of Tenn. Dep't of Children's Servs.,* 510 F. 3d 631, 634 (6th

Cir. 2007). The Tennessee statute of limitations for personal injury claims, specifically for claims brought under federal civil rights statutes such as §1983, is one year. *Id.*

Listing an individual as a "John Doe" or unidentified individual defendant does not "stop the statute of limitations from running or toll the limitations period as to that defendant." ("[S]ubstituting a named defendant for a previously unnamed 'John Doe,' defendant is considered to be a change in parties, rather than a substitution of parties, for purposes of *fed. R. Civ. P.* 15(c). Thus, new parties may not be added after the statute of limitations has run and such amendments do not satisfy the mistaken identity requirement of Rule 15(c)(3)(B))." *See also Cross v. City of Detroit,* No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008) (citing *Garvin v. City of Philadelphia,* 354 F.3d 215, 220 (3rd Cir. 2003)).

Further, [w]here a plaintiff is temporarily unable to ascertain a defendant's actual name, the plaintiff may initially file a complaint that names an unknown defendant by using a 'John Doe' appellation or similar pseudonym. However, simply identifying an unknown defendant in the complaint by the pseudonym of John Doe is not enough to commence a civil action against that unknown defendant. A civil action cannot be commenced against a fictitious party such as an unknown John Doe. *Bufalino v. Michigan Bell Telephone Co.,* 404 F.2d 1023, 1028 (6th Cir. 1968) (civil action against Doe defendants never commenced because they were not identified by their real names and not served with process)" Thomas *v. Bivens*, No. 3:09-CV-62, 2011 U.S. Dist. LEXIS 1005 (E.D. Tenn. Jan. 5, 2011). In the case at bar, the officers involved in the shooting incident with Mykel Jenkins were identified in documents sent to the Plaintiff during the discovery phase of this litigation. These officers were identified well before the deadline to amend the complaint or add parties had passed. However, Plaintiff made no attempt to add individual officers to her claim. As such, all of the John Does should be dismissed from this case.

7

## 2. THE CHATTANOOGA POLICE DEPARTMENT IS NOT A PROPER PARTY TO THIS LAWSUIT

Defendant, Chattanooga Police Department, is not a proper party to this lawsuit. *Moore v. Chattanooga Police Dep't*, 2008 U.S. Dist. LEXIS 73939, at *9, 2008 WL 3896114 (E.D. Tenn. Aug. 19, 2008) ("The Chattanooga Police Department is not a municipality but is merely a municipal agency or department of the City of Chattanooga rather than a separate legal entity." (Citations omitted)) See also *Matthews v. Jones*, 35 F. 3d 1046, 1049 (6th Cir. 1994) (noting that the police department is not an entity that can be sued); *Damron v. Pfannes*, 785 F. Supp. 644, 646 (E.D. Mich. 1992) (stating that a municipal police department is not a legal entity separate from its parent city). Because the Chattanooga Police Department is not an entity subject to suit and the City of Chattanooga is a party to this action, all claims against it should be dismissed.

## 3. ALL CITY DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS IN COUNTS I AND II UNDER 42 U.S.C. §1983 SINCE THE EVIDENCE CLEARLY SHOWS THAT THE DEFENDANT CITY DOES NOT HAVE ANY UNCONSTITUTIONAL POLICY, CUSTOM, OR PRACTICE AND DOES NOT FAIL TO ADEQUATELY TRAIN AND/OR SUPERVISE ITS POLICE OFFICERS IN THE USE OF DEADLY FORCE.

The Complaint asserts in Count I that the Defendant Police Officers violated Jenkins' constitutional rights under 42 U.S.C. §1983 by using excessive and unreasonable deadly force on her son and that Defendant City failed to provide supervision and proper training to prevent incidents of excessive force. Count II repeats the allegations contained in Count I against the City and adds that City had unconstitutional customs, practices, and policies relating to the use of force and in failing to adequately train and supervise its officers in the use of deadly force at the time of this incident that was an underlying cause of Mykel Jenkins' death.

All City Defendants are entitled to summary judgment with respect to all of Plaintiff's claims under §1983 whether based upon an alleged unconstitutional municipal policy and custom

8

relating to the use of deadly force; an alleged municipal policy and custom of improper training of its police officers; or an alleged municipal policy and custom of failure to take any action to control or supervise the training and behavior of its police officers.

The City is entitled to summary judgment in its favor with respect to Plaintiff's claims because the City did not, in fact, have any custom, policy or practice of allowing its police officers to use excessive or unwarranted force against person or to intentionally violate the civil rights of individuals. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978). Municipalities are only liable under Section 1983 if they have an established policy or custom that causes the alleged injury.

> A municipality may be held liable only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.' The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue.

*Bennett v. City of Eastpointe*, 410 F.3d 810, 818-19 (6th Cir, 2005) (quotations and citations omitted). Plaintiffs must prove that their particular injuries were "incurred because of the execution of the policy or custom." *Cunningham v. Sisk*, 2003 WL 23471541, *14 (E.D. Tenn. 2003) (citing *Board of County Comm'rs of Bryan County v, Brown*, 520 U.S. 397, 405 (1997); *Gregory v. Shelby County, Tenn.*, 220 F.3d 443, 442 (6th Cir. 2000); and *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

This Court has previously held that a custom must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Cunningham*, 2003 WL 23471541 at *14. Plaintiff may establish a policy or custom in several ways. There may be an official policy that defendants promulgated. *Id.* Such a custom must be "so widespread and commonly accepted as to

in effect have the force of law." *Cunningham, supra* at *14. Where the evidence demonstrates that a city "adopted detailed procedures to safeguard citizens' interests during arrest and following complaints of police brutality," liability against the city on the basis of custom or policy may not be appropriate. *See Dorsey v. City of Detroit,* 858 F.2d 338, 345 (6th Cir. 1988).

In *Canton v. Harris*, 489 U.S. 378, 385 and 388 (1989), the Supreme Court stated as follows regarding liability under 42 U.S.C. §1983:

> In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), we decided that a municipality can be found liable under § 1983 only where the municipality <u>itself</u> causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983. *Id.* at 694-695. 'It is only when the "execution of the government's policy or custom. . . inflicts the injury" that he municipality may be held liable under § 1983.'
>
> …
>
> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in *Monell*, 436 U.S. at 694 and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.' Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. As Justice Brennan's opinion in *Pembaur v. Cincinnati*, 475 U.S. 469 (1986) put it: '[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives' by city policy makers. *See also Oklahoma City v. Tuttle*, 471 U.S. at 823. (opinion of Rehnquist, J.) Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983.

To impose liability on a governmental entity, a plaintiff is required under *Monell* to show that there was some official governmental policy or custom in place that violated the plaintiff's constitutional rights. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). A plaintiff must prove that the municipality itself supported the violation of rights alleged, not just that a violation

of rights occurred. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3rd Cir. 1990) (citing *Monell*, 436 U.S. at 694).

The burden is on the plaintiff to show that a policymaker is responsible either for the policy, or through acquiescence, for the custom. *Id.* A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim and conclusory allegations are not enough. *See Warren v. Shelby County, Tenn.*, 191 F. Supp. 2d 980, 984 (W.D. Tenn. 2001); *Culbertson v. Doan*, 125 F. Supp. 2d 252, 263-64 (S.D. Ohio 2000).

The Sixth Circuit has previously reviewed municipal liability under §1983 in the case of *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Thomas v. City of Chattanooga*, 398 F. 3d 426, 429 (6th Cir. 2005). Within this Circuit, municipal liability in training situations requires the plaintiff "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Stemler, supra.* at p. 65. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal act or disregard of a known or obvious consequence of his actions".

This Circuit has clearly held in *Stemler, supra at* 865 and in *Thomas, supra* at 429-434, that §1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees. Where any identified policy is facially lawful as asserted in this case, plaintiffs in this circuit "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397,407 (1997) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious". *Stemler,*

126 F.3d at 865.

In particular, to establish municipal liability, a plaintiff must prove: 1) the training program was inadequate to the tasks that officers perform; 2) that the inadequacy is the result of the City's deliberate indifference; and 3) that the inadequacy is "closely related to" or "actually caused" the plaintiffs' injury. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). None of these factors exists in this case - factually or legally. As such, City submits that it is entitled to summary judgement as a matter of law.

**a.    Plaintiff cannot prove that the City's policies and procedures are unconstitutional.**

The affidavits of Scruggs and Zirk establish that City has adopted written policies and procedures that are constitutional including ADM-5 that was the official policy of the CPD on use of force in effect on March 19, 2021. Defendants' expert Kapelsohn further opined that the relevant policies were consistent with federal use of force standards[1]. Plaintiff has offered no expert testimony to rebut this opinion. There is a total lack of evidence in this record that any written policy or procedure adopted by City on the use of force by its officers was unconstitutional.

**b.    Plaintiff cannot prove that the City failed to adequately monitor, supervise and evaluate the performance of its officers and their use of deadly force applications.**

While there are bare allegations in Plaintiff's Complaint that City failed to properly supervise its police officers, there is a total lack of factual evidence to support these allegations. The affidavits of Zirk, Chambers, and Scruggs establish that the City has established a system for the supervision of its officers and for the discipline of officers that violate City's policies and procedures. Plaintiff offers no evidence or experts that contend otherwise. There is a total lack of

---

1 Kapelsohn Report P. 18 ¶7

factual evidence in this record that City failed to properly supervise its police officers due to any deliberate indifference as required by law.

### c. Plaintiff cannot prove that the City failed to adequately train its officers regarding the use of deadly force.

The constitutional limits on the use of deadly force are trained by CPD training staff, in the academy and annually during in-service training, in accord with the Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1 (1985) which holds that the police may not use deadly force against a citizen unless "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." In this case, Mykel Jenkins maintained control of a sharp object, threatened to put the eyes out of one officer, and refused multiple orders by officers to put any items in his hands down, including the sharp object. There is no dispute from the video evidence in this record that Jenkins threatened the officers on scene, and that the police officers' actions in initially using a taser and then using deadly force were justifiable to preserve the lives of those present.

The United States Supreme Court has held in due process deprivation cases that "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation" against a governmental defendant. *County of Sacramento v. Lewis*, 523 U.S. 833, 853 - 854 (1998). "Liability for negligently inflicted harm is beneath the threshold of the Constitution."

> But when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed'.

*Lewis,* 523 U.S. at 854.

Plaintiff has failed to offer any proof other than bare assertions in the complaint that the City failed to adequately train its officers regarding the use of deadly force. Zirk has stated in the

affidavit that all these police officers are trained "to use the minimum amount of force necessary to conduct lawful public activities.[2] Scruggs has further provided policy explanations on the training and review of city officers on the use of force which is monitored by the City.

There was no constitutional violation in the training provided to Officers Blumenberg, Vrandenburgh, Martin and Timmons by the City with respect to the shooting of Jenkins under the exigent circumstances presented by Mykel Jenkins actions in this incident. The facts relating to the constitutionally appropriate training on use of deadly force and supervision of Officers Blumenberg, Vrandenburgh, Martin, and Timmons by the City are in the record in this case from the affidavits submitted by Ron Zirk. None of these facts or opinions establish that the City was deliberately indifferent in any training or supervision of these officers for which it could be liable under § 1983.

**4.  THE CITY IS ENTITLED TO SUMMARY JUDGMENT AS TO ANY COMMON LAW ASSAULT AND BATTERY CLAIMS IN COUNTS THREE AND SIX BASED UPON THE IMMUNITY OF GOVERNMENTAL ENTITIES UNDER TENNESSEE LAW.**

City Defendants are also entitled to summary judgment as to any common law claims of assault and battery in Count Three because Plaintiff has failed to identify any "independent acts of negligence" by the City that "contributed to, or allowed injuries directly resulting from the intentional acts of another employee." *Baines v. Wilson County*, 86 S.W.3d 575, 580 (Tenn. Ct. App. 2002). All John Doe(s) 1-4, in their official capacities to the extent they are not dismissed for the reasons stated above, are also entitled to summary judgment based on governmental immunity with respect to any state law negligence claims contained in the Complaint which are within the GTLA.

---

2 Zirk Affidavit ¶6.

Tennessee law provides that a civil assault consists of two elements: "(1) An intentional attempt or the unmistakable appearance of an intentional attempt to do harm to another person; and (2) [t]he present ability or the unmistakable appearance of the present ability to do that, harm." T.P.I.–Civil 8.01 Definition–Assault. *See also Thompson v. Williamson County*, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997); *Huffman v. State*, 292 S.W.2d 738, 742 (Tenn. 1956), *overruled in part on other grounds by State v. Irvin*, 603 S.W.2d 121, 123 (Tenn. 1980). Tennessee law provides that a civil battery is "[a]ny intentional, unlawful, and harmful [or offensive] physical contact by one person with another person. The intent required for a battery is not an intent to cause harm. It is an intent to do the act that causes the harm." T.P.I.–Civil 8.01 Definition–Battery. *See also Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995)*; Huffman*, 292 S.W.2d at 742.

Although the officers who came to the dispatched call for help by Plaintiff due to the actions of her son and were involved with the tasing and shooting incident with Mykel Jenkins have been disclosed to Plaintiff, Plaintiff has failed to timely identify any specific officers in their official or individual capacities in her lawsuit who assaulted her son.

Any claims of negligence against the City should be barred pursuant to Tenn. Code Ann. § 29-20-310(b), which provides, "No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter...." The TGTLA does not remove immunity for certain intentional torts, which are alleged against governmental employees, even when those employees are not identified. However, pursuant to Tenn. Code Ann. § 29-20-205 (2), all governmental entities are generally immune from suit for any enumerated intentional torts of such governmental employees. When

15

immunity is removed by the statute, any claim for damages must be brought in strict compliance with the terms of the GTLA. *See* Tenn. Code Ann. § 29-20-201(c).

Under Tennessee law, any negligence claims against the City are governed by the GTLA. Under the GTLA, a court must first determine that the acts of the employee were negligent acts or omissions of the employee and the proximate cause of the plaintiff's injury. Then, the court must determine whether the employee acted within the scope of employment and if any of the exceptions listed in Tenn. Code Ann. § 29-20-205 are applicable to the facts before the court. *See* Tenn. Code Ann. § 29-29-310.

In *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 81 (Tenn. 2001), the Tennessee Supreme Court held that a city could be liable for the intentional tort of an employee, such as assault or battery, that was not one of those enumerated in Tenn. Code Ann. § 29-20-205, **but only if the alleged injury was proximately caused by a negligent act or omission of a city employee.** Section 29-20-205 provides only for the removal of immunity from suit against governmental entities for injuries proximately caused by certain negligent acts or omissions of employees within the scope of their employment. Immunity from suit generally is removed for negligent acts or omissions except if the injury arises out of certain enumerated acts and intentional torts set forth in Tenn. Code Ann. § 29-20-205(1)-(9).

This Court has held that claims under the TGTLA for false arrest, civil rights claims or false imprisonment are barred as a matter of law due to governmental immunity under Tenn. Code Ann. § 29-20-205(2). *See Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616 (E.D. Tenn. Dec. 12, 2005); *Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179 (E.D. Tenn. Jan. 30, 2004); *Cunningham v. Sisk*, No. 1:01-CV-182, 2003 WL 23471541 (E.D. Tenn. Dec. 4, 2003).

Plaintiff's Complaint merely makes a conclusory statement in Count Three that the actions

16

of certain unnamed John Doe officers and the City constitute a violation of common law assault and battery under Tennessee law. However, the affidavits of Officer Ronald Zirk, Executive Chief Glenn Scruggs, and Major Jonathan Chambers are undisputed evidence in this case that the City does not now, and did not on March 19, 2021, maintain a policy, custom or practice of employing officers who are not properly trained or properly supervised. The record contains no proof of any negligence or policy violations in training or supervision by the City prior to March 19, 2021, which proximately caused any injury or damage to the Plaintiff.

The affidavits and exhibits establish that pursuant to Chattanooga Police Department policy, Officers on scene applied the minimum amount of force necessary to conduct lawful activities until the actions of Mykel Jenkins warranted increase to the level of deadly force. The officers' response to a call at Plaintiff's residence and their attempts to remove Jenkins for violating a Temporary Restraining Order and to provide medical treatment are lawful activities. Officer Blumenberg only deployed a taser after Jenkins' failed to follow commands to drop the sharp object in his hand. After the taser did not work, Officer Blumenberg had to increase the level of force by using his service weapon. None of those actions indicate any intentional assault or battery occurred at the scene as alleged since the actions of the officers were justified within Constitutional limits. As such all claims against the City under the TGTLA should be dismissed.

5. **DEFENDANT CITY OF CHATTANOOGA IS ENTITLED TO JUDGMENT ON THE PLEADINGS WITH RESPECT TO PLAINTIFFS' WRONGFUL DEATH COMPLAINTS IN COUNTS FOUR AND SEVEN SINCE THE CITY RETAINS ITS IMMUNITY FROM SUCH CLAIMS UNDER THE PROVISIONS OF THE TENNESSEE GOVERNMENTAL TORT LIABILITY ACT, TENNESSEE CODE ANNOTATED §29-20-101, *ET SEQ*.**

Defendant City of Chattanooga is entitled to judgment on the pleadings with regard to the plaintiff's claims concerning wrongful death. It is obvious that the plaintiffs' complaints "arise out of" the alleged civil rights violations committed upon Jenkins by the City Defendants in March

17

2021. Under the provisions of the Tennessee Governmental Tort Liability Act, T.C.A. §29-20-101, et seq., governmental entities cannot be held liable for certain enumerated intentional torts of their employees. As the Court stated in *Lawson*, "[i]f the injury at issue arises out of one of the acts specified in Tennessee Code Annotated section 29-205(1)-(9), then immunity still holds. .. . See also *Limbaugh v. Coffee Med. Ctr.*, 59 S.W. 3d 73, 84 (Tenn. 2001). Those enumerated acts include, among other things, discretionary decisions and some intentional torts." *Lawson v. Hawkins Cnty.*, 664 S.W. 3d 54, 60 (Tenn. 2023).

Additionally, "[n]othing in the language of section 29-20-205(2) indicates that there must be an express finding that a civil rights violation occurred in order for the exception to apply. Indeed immunity offered by Section 29-20-205 is broad, preserving immunity for negligence claims so long as the injury arises out of civil rights." *Cochran v. Town of Jonesborough*, 586 S.W. 3d 909, 920 (Tenn. Ct. App. 2019).

In this case, Plaintiff is attempting to disguise her civil rights claims under the guise of wrongful death complaints. A similar issue was discussed by the case *Campbell v. Anderson County*, 695 F. Supp. 2d 764 (E.D. Tenn. 2010). In that case, Campell alleged claims of false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence. *Id.* However, the Court found that Campell's claims against the county were in the context of civil rights case, her alleged injuries arose out of civil rights, thus the county was immune based upon the civil rights exception in Tenn. Code Annotated section 29-20-205(2). *Id* at 778.

In paragraph 43 of the Complaint, the plaintiff alleges that this action is founded on a negligent wrongful death. The Complaint, however, fails to allege any actions on behalf of any City employees which would constitute negligent conduct on their behalf. To the contrary, the Complaint alleges that the actions of City Defendants were intentional with regard to the killing

of Jenkins. Thus, the Defendant City of Chattanooga is entitled to judgment on the pleadings with respect to any possible claim which may be raised against it for a negligent wrongful death.

T.C.A. §29-20-201 provides that all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities except as otherwise provided in this chapter. T.C.A. §29-20-205 provides of removal of immunity for injury caused by negligent act or omission of employees with certain exceptions. Since the Complaint contains no allegations of any negligent act or omissions of any employee of the defendant City of Chattanooga, the defendant City of Chattanooga retains its immunity from any claim of negligent wrongful death in accordance with the provisions of T.C.A. §29-20-201.

In the alternative, this Court has supplemental jurisdiction over Plaintiff's state law claims, and that a district court may, in its discretion, "decline to exercise supplemental jurisdiction over a supplemental claim under §1367(a) if the claim raises a novel or complex issue of state law, and under (4) if there are another compelling reasons for declining jurisdiction." *Thomas, supra* at *26-27 In *Thomas,* the Court declined to exercise supplemental jurisdiction because it held that whether or not the Plaintiff in that case could establish his state law claims of conversion and negligence were novel and complex claims. *Id.* In this case, Plaintiff has raised several state law claims regarding wrongful death, assault and battery and negligence. This Court has the option to decline supplemental jurisdiction on the state law claims if it finds that these issues are novel, complex, and that the state court is the best forum to address these issues.

## 6. THE CITY IS ENTITLED TO SUMMARY JUDGMENT AS TO ANY NEGLIGENCE CLAIMS IN COUNT FIVE BASED UPON THE IMMUNITY OF GOVERNMENTAL ENTITIES UNDER TENNESSEE LAW.

All City Defendants are entitled to summary judgment regarding any negligence claims set forth in Count Five based upon negligent supervision under the Tennessee Governmental Tort

Liability Act ("GTLA"), Tenn. Code. Ann. § 29-20-101 *et seq*. Tennessee state courts generally retain exclusive jurisdiction over claims arising under the GTLA. To the extent that this Court does not dismiss all federal claims based on this Motion for Summary Judgment or abstain from Tennessee state law claims under the GTLA, this Court still has supplemental jurisdiction over Plaintiff's state law negligent supervision claims which will need to be considered.

John Doe(s) 1–4 have been sued in their individual and official capacities as police officers of the City where they were acting within the scope of their employment under the GTLA while investigating a motor vehicle fatality. The GTLA provides as follows:

> Immunity from suit of all government entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of employment except if the injury arises out of:
>
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused[.]

Tenn. Code Ann. § 29-20-205. *See Hisel v. City of Clarksville*, 2007 WL 700983, at *14 (M.D. Tenn. Mar. 2, 2007) (noting that pursuant to the GTLA, municipalities are "generally subject to suit for civil claims sounding in negligence unless the negligence claims 'arise out' of the exceptions provided in Tenn. Code. Ann. § 29-20-205") (quoting *Rhodes v. City of Chattanooga*, 2005 WL 2647921, at *8 (E.D. Tenn. Oct. 14, 2005)).

The City and John Doe(s) 1-4 in their official capacities are entitled to summary judgment as to the Plaintiff's state law negligence claims. The TGTLA waives governmental immunity for negligence that proximately causes injuries arising from the torts of assault or battery. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2001) (holding that the intentional torts exception of Tenn. Code Ann. § 29-20-205(2) does not include the torts of assault and battery). However, even where governmental immunity is not applicable, to prevail on his claim, a plaintiff still must prove "independent acts of negligence on the part of government employees led to,

20

contributed to, or allowed injuries directly resulting from intentional acts." *Baines,* 86 S.W.3d at 580.

A plaintiff may not simply show that a governmental employee committed an intentional tort for which governmental immunity has not been waived and then rely on the doctrine of *respondeat superior* to attach liability to the governmental employer. *Pendleton v. Metro. Gov't of Nashville*, No. M2004-01910-COA-R3-CV, 2005 WL 2138240, at *4 (Tenn. Ct. App. Sept. 1, 2005).

In *Hughes v. Metropolitan Gov't of Nashville,* 340 S.W.3d 352 (Tenn. 2011), the Tennessee Supreme Court reaffirmed the cases previously cited herein in Defendant City's brief concerning negligence liability under the GTLA. That decision holds, in pertinent part, "Since 2001, the Court of Appeals has correctly interpreted *Limbaugh* to mean that 'the GTLA does not allow plaintiffs to hold governmental entities vicariously liable for intentional torts not exempted under section 29-20-205(2), but rather requires a direct showing [of] negligence on the part of the governmental entity.'" 340 S.W.3d at 368 (quoting *Pendleton*, 2005 WL 2138240, at *3). The Tennessee Supreme Court further held as follows:

> Because an assault or a battery is not a negligent act, *see Limbaugh*, 59 S.W.3d at 84, the 'negligent act or omission' required to waive immunity under section 29-20-205 does not refer to the intentional tort. When, therefore, there has been no showing of negligence by the governmental entity in supervision of one of its employees acting within the scope of employment, the exception to sovereign immunities set forth in section 29-20-205 will not apply.

*Hughes*, 340 S.W.3d at 368-69. The Tennessee Supreme Court has now established that unless the evidence clearly proves that Defendant City was negligent in supervising its police officers, the City is entitled to the protections of governmental immunity, such that no claim may be asserted against it for negligent supervision or for an underlying assault or battery by its police officers, which is an intentional tort under Tennessee law. The record in this case does not contain any proof

21

of negligence in the supervision and training of any John Doe(s) 1-4.

The Plaintiff has not identified any acts of negligence by the City other than making conclusory allegations that are not supported in the record. Executive Chief Scruggs is not aware of any founded or sustained Internal Affairs investigations concerning improper use of force or arrest procedures by any of the unnamed officers who were involved in this incident prior to March 19, 2021. (Scruggs Aff. ¶ 7, 8). Therefore, Defendant City is entitled to summary judgment as to any claims of negligent training or supervision of its officers prior to this incident on March 19, 2021.

**7. PLAINTIFF IS NOT A PROPER PERSON TO BRING TO BRING THIS SUIT PURSUANT TO TENNESSEE CODE ANNOTATED SECTION 20-5-106.**

In Plaintiff's complaint, she asserts that as Mykel Jenkins' mother, she is the appropriate person to bring this claim on behalf of Mykel Jenkins' estate pursuant to Tennessee Code Annotated 20-5-106.

According to Tennessee Code Annotated Section 20-5-106:

> The right of action that a person who dies from injuries received from another, or whose death is caused by a wrongful act, omission, or killing by another, would have had against the wrongdoer, in case heath had not ensued, shall not abate or be extinguished by the person's death, **but shall pass to**. . . to the person's personal representative, for the benefit of the person's surviving spouse or next of kin; **the person's natural parent or parent or next of kin at the time of death decedent was in the custody of the natural parents or parent and had not been legally surrendered or abandoned by them pursuant to any Court order removing such person from the custody of such parents or parent**. (Emphasis added).

Tenn Code Ann. §20-5-106 (2021).

At the time of Mykel Jenkins' death, he was 29 years old. (Cogswell Affidavit, Ex. 2). Ms. Jenkins did not have legal custody of her son at that time. In fact, she told police that Mykel Jenkins was not supposed to be in her home based on a prior arrest on March 2, 2021 (Jenkins

Case 1:22-cv-00069-DCLC-CHS   Document 30   Filed 10/02/23   Page 22 of 24   PageID #: 1992

Hamilton County interview 12:30:06-12:33:52; Axon Body 3 Video X6039A40D 16:00-17:48).

Further, to the City's knowledge, Ms. Jenkins did not have a conservatorship or any other authority

over Mykel Jenkins. Therefore, Ms. Isabel Jenkins did not have any legal authority over Mykel

Jenkins, and at the time of his death, no Court of competent jurisdiction had adjudicated him to be

incompetent in any way. As such, Mykel Jenkins was not in Ms. Jenkins legal custody.

Additionally, Ms. Jenkins testified in her deposition that she did not open an estate for Mykel

Jenkins. (Jenkins Depo. P. 115, Ll. 4-7). There is also no evidence that Mykel Jenkins executed a

will with an appointed executor. This matter should be dismissed because Ms. Jenkins is not a

proper party to this suit pursuant to Tenn. Code Ann. § 20-5-106.

## CONCLUSION

For the reasons stated herein, all of the City Defendants pray that their motion for summary

judgment be granted and that this matter be dismissed with prejudice and that they be entitled to

recover their costs of defense.

Respectfully submitted,

CITY OF CHATTANOOGA, TENNESSEE
OFFICE OF THE CITY ATTORNEY

By        s/ Phillip A. Noblett
    PHILLIP A. NOBLETT - BPR #10074
    *City Attorney*
    KATHRYN C. MCDONALD – BPR #030950
    *Assistant City Attorney*
    100 East 11th Street, Suite 200
    Chattanooga, TN   37402
    (423) 643-8250

23

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendant's Memorandum of Law was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.   All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

This 2nd day of October, 2023.

_____s/ Phillip A. Noblett_____
Phillip A. Noblett

City of Chattanooga, Tennessee
Office of the City Attorney
100 E. 11th Street, Suite 200
Chattanooga, Tennessee 37402
(423) 643-8250
pnoblett@chattanooga.gov