IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ISABEL TERESA FERNANDEZ JENKINS )<br>as next of kin of MYKEL D. JENKINS )<br>(Deceased), )<br> )<br>Plaintiff, )<br> )<br>V. )<br> )<br>CITY OF CHATTANOOGA, )<br>CHATTANOOGA POLICE DEPARTMENT, )<br>JOHN DOE 1, JOHN DOE 2, JOHN DOE 3 )<br>JOHN DOE 4 In their official capacities as )<br>agents for the Chattanooga Police Department )<br>and in their individual capacity )<br> )<br>Defendants. ) | NO: 1:22-CV-00069-DCLC-CHS<br><br>JURY DEMAND |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff, by and through counsel of record, Robert Davis, and makes the following Response to the Motion for Summary Judgment filed by the Defendant on October 2, 2023. Plaintiff makes the following responses to the alleged undisputed facts in the Defendant's Motion for Summary Judgment.

1. On March 19, 2021, at approximately 10:23 a.m. The Chattanooga Police Department responded to a disorder call at 3624 Premium Drive, Chattanooga Tennessee.

   **RESPONSE:** Undisputed

2. Ms. Isabel Jenkins made the initial call to the police.

   **RESPONSE:** Undisputed

3. Approximately two (2) weeks prior to March 19, 2021, Ms. Jenkins called the police and told them that Mykel Jenkins was destroying her property because he punched through the wall.

   **RESPONSE:** Undisputed for purposes of summary judgment

4. Officer Brian Blumenberg and Officer Blake Martin initially responded to the disorder call on March 19, 2021.

   **RESPONSE:** Undisputed

5. These two officers initially encountered Mykel Jenkins in the residence pacing in a bedroom.

   **RESPONSE:** Undisputed

6. Ms. Isabel Jenkins was also on scene and told police that Mykel Jenkins just got out of jail for throwing beer cans. Ms. Jenkins also stated that Mykel Jenkins hit her with the beer can.

   **RESPONSE:** Undisputed for purposes of summary judgment

7. Officer Blumenberg asked Mykel Jenkins to put the items in his hands down on multiple occasions

   **RESPONSE:** Undisputed

8. Mykel Jenkins started pacing back and forth with a sharp object. Officers Martin and Blumenberg told Mykel Jenkins that they were trying to get him help. One of the officers asked Ms. Jenkins for background information on Mykel Jenkins.

   **RESPONSE:** Disputed.

   At this point in the interaction Mykel was fiddling with a pair of shoes and a beer can, but he did not have a sharp object in his hand and he was contained to his bedroom where he

was agitated but was not pacing (Axon_Body_3_Video X6039A7V1 4:15-9:40).

9. Ms. Isabel Jenkins next informed the officers that Mykel Jenkins was not supposed to be at the residence and that he stole her documentation so she cannot go to Court. She also stated that Mykel Jenkins needs to get out of her home and have his own life.

   **RESPONSE:** Undisputed for purposes of summary judgment

10. Ms. Isabel Jenkins also informed police that Mykel Jenkins was on drugs and that he has friends that give him cocaine.

    **RESPONSE:** Undisputed

11. Officers later followed Mykel Jenkins into another bedroom and asked him to come with them to go get help. During this exchange, Mykel Jenkins continues to move back and forth and picks up a sharp object.

    **RESPONSE:** Undisputed

12. Officer Blumenberg instructed Mykel Jenkins to put the objects in his hand down several times.

    **RESPONSE:** Undisputed

13. Mykel Jenkins then approached officer Martin in an aggressive manner with the sharp object and tells him "I'm gonna get you. Left eye or Right eye I'll get them both.

    **RESPONSE:** Undisputed

14. Officer Blumenberg tells Mykel Jenkins to put down the items in his hands several times due to his close proximity to Officer Martin. Mykel Jenkins refuses to put down the items and Officer Blumenberg eventually deployed his taser on Mykel Jenkins.

    **RESPONSE:** Undisputed

15. Before this taser incident occurred, Ms. Isabel Jenkins was moved to another part of the

home outside of the bedroom where the officers and Mykel Jenkins were located.

**RESPONSE:** Undisputed

16. Ms. Isabel Jenkins was in another room of the house when Mykel Jenkins was tased.

    **RESPONSE:** Undisputed for purposes of summary judgment

17. After the taser was deployed, Mykel Jenkins started to approach Officer Martin. Officer Martin delivered a front kick to Mykel Jenkins and Mykel Jenkins fell onto the bed.

    **RESPONSE:** Undisputed

18. Mykel Jenkins attempted to get up and aggressively approached Officer Blumenberg. Officer Blumenberg again instructed Mykel Jenkins to put down the sharp object and other items in his hands. Mykel Jenkins did not comply with Officer Blumenberg's orders and moved closer to Officer Blumenberg in a threatening manner. Officer Blumenberg then shot Mykel Jenkins multiple times with his service weapon.

    **RESPONSE:** Undisputed

19. After the shooting. Ms. Isabel Jenkins was interviewed by the Hamilton County Sheriff's department where she gave a statement.

    **RESPONSE:** Undisputed

20. In Ms. Jenkins' statement, she advised the Sheriff's Department investigator that Mykel Jenkins was not supposed to be there. She also stated that he was "going crazy" and would not leave.

    **RESPONSE:** Undisputed

21. Ms. Isabel Jenkins admitted that Mykel Jenkins had a background of taking drugs and had previously been violent with her. Ms. Isabel Jenkins also stated that Mykel Jenkins had previously gotten violent with her.

**RESPONSE:** Undisputed

22. The post-mortem examination of Mykel Jenkins revealed that he had 2100/ng/mL of methamphetamine, 64ng/mL of amphetamine in his system at the time of his death.

    **RESPONSE:** Undisputed

23. The actions of Officer Blumenberg were reviewed by his chain of command. The chain of command investigation found that Officer Blumenberg's actions in the use of deadly force were in compliance with both the City of Chattanooga Police department policy in ADM-05 and Tennessee state law.

    **RESPONSE:** Undisputed

## ADDITIONAL DISPUTED MATERIAL FACTS

1. Mykel Jenkins told officers on scene that he wanted to go to "County" when asked if he wanted to go somewhere to "get some help". Officers made no attempt to place Mykel in restraints and get him transported to a more secure location (Axon_Body_3_Video X6039A7V1 4:15-5:15).

2. Officers were made aware immediately upon arrival at the residence that Mykel was not supposed to be in the residence and made no attempts to restrain Mykel and remove him from the location despite stating several times that they needed to transport him elsewhere (Axon_Body_3_Video X6039A7V1 2:30-7:30).

## RELEVANT LAW

Federal Rule of Civil Procedure 56. requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an

adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir. 2009); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." Moldowan, 578 F.3d at 374 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." Anderson, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. Moldowan, 578 F.3d at 374 (citing Anderson, 477 U.S. at 252).

**DISCUSSION AND ARGUMENT**

Defendant City asserts that granting summary judgment against the Plaintiff on the claims as they have been laid out in the Complaint filed on March 18, 2022, is proper based on several theories of law. The Defendant makes the argument for dismissal of the John Does 1-4 Defendants named in the Complaint based on the failure to name the individual Officers involved in the pleadings as well as the alleged subsequent improper proper service of process on the four individual officers within the designated time required by the statute of limitations for a cause of action such as this one. The Defendant additionally argues that the Chattanooga Police Department should be dismissed from this suit as the Department is not a proper party to the suit.

The Defendant avers that this Court should find that Plaintiff has not established Municipal liability in this matter and, as such, the Defendants are still entitled to summary judgment on the theory of this lack of liability. Additionally, Defendant asserts that Plaintiff's claims for Assault and Battery, Wrongful Death, and Negligence should not be permitted to proceed as the Defendant City retains Immunity as a Governmental Entity under the Tennessee Governmental Tort Liability Act ("GTLA"). Lastly, Defendant's raise the argument that Plaintiff, Isabel Fernandez Jenkins, is not the proper person to bring this suit as the surviving parent of the deceased, Mykel Jenkins. Plaintiff would show that several of Defendant's arguments are partially misplaced as:

> **A. Plaintiff did not individually name and serve process upon the named John Doe Defendants in their individual capacity or in their capacity as agents of the Chattanooga Police Department within the 1 year required under the statute of limitations for a § 1983 cause of action**

Plaintiff is in agreement with the Defendant that the individual Chattanooga Police Department Officers that were on scene and in contact with Mr. Jenkins, who were referenced simply as John Does 1-4 in Plaintiff's Complaint, have since been identified individually as Officer Brian Blumenburg, Officer Blake Martin, Officer Barry Vradenburg, and Officer Lucas Timmons. Plaintiff is also in agreement with Defendant that these officers have not been individually named on any Pleadings subsequent to their identification and, as such, have not at any time prior to the writing of this Response, been individually served notice of this suit in accordance with the established timeline of the statute of limitations for a § 1983 action.

As such, Plaintiff does not object to the dismissal of John Doe 1, John Doe 2, John Doe 3, and John Doe 4 from this suit in their official capacity as agents for the Chattanooga Police Department as well as in their individual capacity.

> **B. A dismissal of the Chattanooga Police Department as a party to this suit**

**does not mean the Plaintiff's claims against the City of Chattanooga should be dismissed on summary judgment.**

Plaintiff is in agreement with the Defendant that the dismissal of Chattanooga Police Department is appropriate and feels it would be moot to argue otherwise. However, Plaintiff does disagree that this is a sufficient reason for the claims that have been asserted against the alternative Defendant(s) should be dismissed. The City of Chattanooga is still a proper party to this litigation and claims against them should proceed unaffected by the dismissal of the Chattanooga Police Department.

**C.     Plaintiff has evidence to support the claim of municipal liability**

In the context of a municipal liability claim under 42 U.S.C. § 1983, an outcome that would effectively make the municipality liable on the basis of respondeat superior is specifically prohibited by *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Burgess v. Fischer*, 735 F.3d 462, 469 (6th Cir. 2013). A plaintiff raising a municipal liability claim under 42 U.S.C.S. § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. A municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Id.* In the decision in *Monell*, the Supreme Court held that a municipality will only be liable under §1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell</u>, 436 U.S. at 690.

In *Canton v. Harris*, 489 U.S. 378, 385 and 388 (1989), the Supreme Court stated as follows regarding liability under 42 U.S.C. $1983:

> *In Monell v. New York City Dept, of Social Services*, 436 U.S. 638 (1978) we decided that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under & 1983. *Id*. at 694-695. "It is only when the "execution of the government's policy or custom... inflicts the injury" that the municipality may be held liable under § 1983.
>
> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in *Monell*, 436 U.S. at 694 and *Polk County v Dodson*, 454 U.S, 312. 326 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice Brennan's opinion in *Perhaur v. Cincinnati*, 475 U.S. 469 (1986) put it: "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives" by city policy makers See also *Oklahoma City v. Tuttle*, 471 U.S. at 823. (opinion of Rehnquist, J.) Only where a failure to train reflects a "deliberate' or "conscious" choice by a municipality - a 'policy' as defined by our prior cases -can a city be liable for such a failure under $ 1983.

To impose liability on a governmental entity, a plaintiff is required under *Monell* to show that there was some official governmental policy or custom in place that violated the plaintiff's constitutional rights, *Monell v. Dept, of Social Services*, 436 U.S. 658, 691 (1978). A plaintiff must prove that the municipality itself supported the violation of rights alleged, not just that a violation of rights occurred. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3rd Cir. 1990) (citing *Monell*, 436 U.S. at 694).

The burden is on the plaintiff to show that a policymaker is responsible either for the policy, or through acquiescence, for the custom. *Id*. A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim and conclusory allegations are not enough. See *Warren v. Shelby County*, Tenn. 191 F. Supp 2d 980, 984 (W.D. Tenn, 2001): *Culbertson v.*

*Doan*. 125 F. Supp. 2d 252, 263-264 (S.D. Ohio 2000).

The Sixth Circuit has previously reviewed municipal liability under §1983 in the case of *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997): *Thomas v. City of Chattanooga*. 398 F. 3d 426. 429 (6th Cir. 2005). Within this Circuit, municipal liability in training situations requires the plaintiff "must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." Stemler, supra, at p. 65. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal act or disregard of a known or obvious consequence of his actions'.

This Circuit has clearly held in *Stemler*, *supra at* 865 and in *Thomas, supra at* 429-434, that § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees. Where any identified policy is facially lawful as asserted in this case, plaintiffs in this circuit "must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences A showing of simple or even heightened negligence will not suffice. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397,407 (1997) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious". *Stemler*, 130 F. 3d at 865.

In particular, to establish municipal liability, a plaintiff must prove: 1) the training program was inadequate to the tasks that officers perform: 2) that the adequacy is the result of the City's deliberate indifference; and 3) that the inadequacy is "closely related to'" or "actually caused" the plaintiffs' injury. *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Plaintiff's claims are supported by a myriad of evidence in the record of this case, but

most significant, in the Report of Dr. John M. Daniel [Attached as Exhibit A]. Dr. Daniel found that:

    1.    Officers Blumenburg and Martin were reasonably trained police officers who should have immediately recognized

    2.    Both Officers Blumenberg and Martin exhibit a lack of adequate training when approaching Mykel in their failure to employ strategic tactics on which the Chattanooga Police Department have relevant policies in effect.

    3.    Officers Blumenberg and Martin demonstrated a disregard to trained principles.

[Ex. A, pg. 2-5]

Plaintiff would insist that the actions of the Officers in their engagement with Mykel during this entire interaction evidences inadequacy in the training that they have received in regards to engaging with individuals who are in a state of excited delirium or not in their sound mind (City of Chattanooga Police Department 2019 Use of Force In-Service Powerpoint Pg. 62-66). According to the curriculum on which the officers of the Chattanooga Police Department are trained, when an Officer encounters a person in a state of excited delirium, as it is clear that Mykel Jenkins was at this time, the first step of the trained protocol is to quickly and safely get the subject under control. *Id*. When Officers Blumenberg and Martin arrived on scene and initially engaged Mykel, there was certainly evidence that Mykel was experiencing an episode of excited delirium as he was clearly agitated and showing signs of being on some sort of intoxicating substances (Axon_Body_3_Video X6039A7V1 3:00-8:00). As such, in accordance with the written policies and procedures of the Chattanooga Police Department, both officers should have been looking for a way to quickly gain control over Mykel and get him restrained. At this time, Mykel did appear agitated and erratic in his behaviors, but he was speaking with the officers and he was complying with different verbal commands from the officers regarding his halting his fidgeting (Axon_Body_3_Video X6039A7V1 2:30-3:40). Officers allowed Mykel to

leave the bedroom where they had him centered and pace around the house unsupervised (Axon_Body_3_Video X6039A7V1 9:40-20:15). Mykel predictably became more agitated as the time passed and officers allowed him to walk back and forth in the home and scream and holler without engaging him or attempting to regain a place of control over him (Axon_Body_3_Video X6039A7V1 9:45-20:15). This failure to follow proper procedure on the part of Officers Blumenberg and Martin specifically, but all other officers in the residence at the time as well evidences that the Defendant City as well as the Defendant Police Department have an established custom of allowing officers to disregard written policies and procedures at will. Such failure to adhere to trained procedures such as properly securing the control and compliance of a subject when there was ample opportunity to do so points to the existence of a disregard for their training and a lack of adherence to the trained policy. Officers Blumenberg and Martin were also trained on the written policies of de-escalation and showed a disregard to the principles of the trained skill. Not only did Officers Blumnenberg and Martin fail to adequately use de-escalation tactics when engaging with Mykel, but each officer on scene in the residence failed to do so as well.

The actions of all of the officers on scene in the residence at this time evidence that there is a widespread established and accepted custom in the department of disregarding the trained useful skills of de-escalation. It is clear to the Plaintiff that this unfortunate incident did not happen as a result of one officer failing to act in a manner that is in accordance with his training, but it was a result of the failure of every officer on scene to utilize the necessary policies and procedures of take-down tactics and arrest tactics to quickly and safely resolve this situation before it escalated to the point where deadly force was necessitated. This evidences a widespread custom on the Police Department's, and by extension the Defendant City's, behalf to allow their

officers to disregard established written policy at will instead of mandating strict adherence to the relevant policy sections that are in place to ensure safety for both the citizen and the officer.

Plaintiff would assert that a City's failure to properly train its officers on strict adherence to relevant practices like arrest procedures for individuals in a state of excited delirium or proper de-escalation procedures for individuals that are not of sound mind due to intoxication or mental illness, evidences a deliberate indifference to the rights of the city's inhabitants and the obvious consequences of allowing officers to come into contact with erratic or agitated individuals without adequate training in how to safely gain control and compliance over the individual.

Plaintiff avers that the failure to properly execute an arrest procedure in the initial moments of contact when Mykel was calm and cooperative constitutes a legal causation for the lethal force that was deployed against Mykel's person later in the interaction. Had the officers on scene been adequately trained to strictly adhere to the policy of proper arrest procedure and de-escalation procedure, there would have been no reason to believe escalation in Mykel's behavior would occur as he would have been safely restrained and in no position to threaten the safety of the other civilian or the officers on scene.

> **D. Plaintiff's claim for Assault and Battery should not be dismissed as there does exist a material dispute of fact on the question of whether the actions taken by the Chattanooga Police Department officers on scene were wholly intentional or whether they constituted acts of negligence which were the proximate cause of Mykel Jenkins' preventable death which would be sufficient to remove Governmental Immunity under the GTLA**

Defendants are moving for summary judgment based on the assertion that Plaintiff's claim is barred by sovereign immunity because under the Tennessee Governmental Tort Liability Act, the City may only lose immunity in cases of certain acts of negligence. The Tennessee Supreme Court's decision in <u>Lawson v. Hawkins County</u> makes it clear that only acts of ordinary negligence are sufficient to remove immunity under the Governmental Tort Liability Act.

Lawson v. Hawkins Cty., No. E2020-01529-SC-R11-CV, 2023 Tenn. LEXIS 8, at *1 (Feb. 16, 2023)(Copy attached as Exhibit C). Where there are intentional acts, acts of gross negligence, or acts of recklessness, removal of government immunity is not proper. The Court in Lawson contrasts the concepts of ordinary negligence, gross negligence, and recklessness. Id. at *9. Recklessness and gross negligence, unlike ordinary negligence, requires a subjective state of mind on the defendant's part which imposed a higher burden. Id. The defendant must either consciously disregard the risks of their actions or show an indifference to any consequences and risks of their actions to be deemed to have been reckless or grossly negligent. Id. at *10

In *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 81 (Tenn. 2001), the Tennessee Supreme Court held that a city could be liable for the intentional tort of an employee, such as assault or battery, that was not one of those enumerated in Tenn. Code Ann. § 29-20-205, **but only if the alleged injury was proximately caused by a negligent act or omission of a city employee**. Section 29-20-205 provides only for the removal of immunity from suit against governmental entities for injuries proximately caused by certain negligent acts or omissions of employees within the scope of their employment. Immunity from suit generally is removed for negligent acts or omissions except if the injury arises out of certain enumerated acts and intentional torts set forth in Tenn. Code Ann. § 29-20-205(1)-(9).

Defendants are asserting that claims propounded by Plaintiff are intentional acts and thus are not sufficient to result in the removal of sovereign immunity. Plaintiff would insist that the actions of the officers in the beginning moments of this altercation were negligent in so far that they had a duty to follow established policies and procedures for de-escalation of a hostile and potentially threatening situation and procedures for the arrest of a potentially threatening subject and as they breached their duty to follow said procedures when they had ample opportunity to do

so, harmful contact was made to Mykel Jenkins when unreasonable lethal force was used against his person that resulted in his death. This negligent act of Officer Blumenberg and Officer Martin in failing to safely and quickly restrain Mykel in accordance with their established procedures, proximately caused the resulting increased level of force that was applied to Mykel's person which resulted in his death.

Plaintiff would argue that it is foreseeable for an individual that is exhibiting erratic and agitated behavior to pose a threat of increasing in their volatile action against themselves or others on scene when they are not properly supervised or restrained. This type of behavior is probable, as time goes on and tensions in the situation increase, to become a situation where an increased level of force may be required to contain them. In this instance, as stated above, the Officers on scene met Mykel when he was exhibiting slightly agitated behavior but was, for all intents and purposes, cooperative and calm enough to allow for temporary restraining of Mykel and transportation of Mykel to a different location to have been a reasonable course of action for the Officers to take. The Officers did not follow the protocol that they are trained on for handling an individual who is in this state of excited delirium and instead allowed Mykel to pace back and forth in the home unsupervised.

Plaintiff avers that the injuries suffered by Mykel Jenkins were proximately caused by certain negligent acts or omissions of the Chattanooga Police Department Officers on scene who were acting within the scope of their employment and as such, the City of Chattanooga is liable for the intentional tort of Assault and Battery committed by their employees. As stated above, Plaintiff does not argue that Defendants John Does 1-4, in their official and individual capacities, should be dismissed for this suit. Even in light of the dismissal of the individual officers, Plaintiff would argue that the City does not retain governmental immunity under the GTLA in this matter

because this crucial act of negligence on the part of their officers is the proximate cause of the unreasonable and unnecessary escalation in force that resulted in Mykel's injuries and subsequent death. The Defendant City of Chattanooga's liability for the actions of their officers is a question for a jury to decide and as such this claim should not be dismissed.

> **E. Plaintiff's claim for wrongful death should not be dismissed as there does exist a material dispute of fact on the question of whether the actions taken by the Chattanooga Police Department officers on scene were wholly intentional or whether they constituted acts of negligence which were the proximate cause of Mykel Jenkins' preventable death which would be sufficient to remove Governmental Immunity under the GTLA**

Plaintiff avers that the injuries suffered by Mykel Jenkins were proximately caused by certain negligent acts or omissions of the Chattanooga Police Department Officers on scene who were acting within the scope of their employment and as such, the City of Chattanooga is liable for theNegligent Wrongful Death of Mykel Jenkins. As stated above, Plaintiff does not argue that Defendants John Does 1-4, in their official and individual capacities, should be dismissed for this suit. Even in light of the dismissal of the individual officers, Plaintiff would argue that the City does not retain governmental immunity under the GTLA in this matter because this crucial act of negligence on the part of their officers is the proximate cause of the unreasonable and unnecessary escalation in force that resulted in Mykel's injuries and subsequent death. The Defendant City of Chattanooga's liability for the actions of their officers is a question for a jury to decide and as such this claim should not be dismissed.

> **F. Plaintiff's claim for negligence should not be dismissed as there does exist a material dispute of fact on the question of whether the actions taken by the Chattanooga Police Department officers on scene were wholly intentional or whether they constituted acts of negligence which were the proximate cause of Mykel Jenkins' preventable death which would be sufficient to remove Governmental Immunity under the GTLA**

As Plaintiff has made clear in the sections above, the Chattanooga Police Department, and by extension the City of Chattanooga itself, as the governing entities for the behavior and actions of the officers that are sent into the community to respond to calls of disturbances or danger have displayed a failure to adequately train and supervise their officers on the specific subjects of maintaining strict adherence to the policies and procedures that have been mandated by the entity to ensure the safety of officers and civilians alike. Plaintiff would state that there is sufficient evidence that the officers on scene at the residence of Mykel Jenkins were negligent in their actions in the interaction with Mykel Jenkins. Officers Blumenberg and Martin should have, in accordance with the policies on which they were trained, performed a quick and safe restraining and transportation of Mykel within the first moments of the interaction once it was clear Mykel was exhibiting symptoms of excited delirium and was only increasing in his agitation levels as the interaction went on. Officers Blumenberg and Martin breached their duty to follow said procedures when they had ample opportunity to do so i nan attempt to mitigate the risk of the situation escalating to levels that were dangerous to all present on the scene. This negligent act of Officer Blumenberg and Officer Martin in failing to safely and quickly restrain Mykel in accordance with their established procedures, proximately caused the resulting increased level of force that was applied to Mykel's person which resulted in his death.

The Chattanooga Police Department, and City of Chattanooga by extension, negligently trained their officers to adhere to the established policies and procedures. Officers are trained on the written policies and procedures to ensure that the officers know how to handle situations in a manner that is policy compliant without outside

factors of adrenaline or hesitation interfering with the process of them neutralizing the situation at hand. (Roddy Dep. pg. 29-31) In this case, it is evident to Plaintiff that the officers on scene were negligently trained in remaining compliant with their trained skills in real world situations as no officer on scene made an attempt to restrain or contain Mykel Jenkins upon initial contact as would have been prudent per the relevant policies and procedures.

Plaintiff avers that the injuries suffered by Mykel Jenkins were proximately caused by certain negligent acts or omissions of the Chattanooga Police Department Officers on scene who were acting within the scope of their employment. As stated above, Plaintiff does not argue that Defendants John Does 1-4, in their official and individual capacities, should be dismissed for this suit. Even in light of the dismissal of the individual officers, Plaintiff would argue that the City does not retain governmental immunity under the GTLA in this matter because this crucial act of negligence on the part of their officers is the proximate cause of the unreasonable and unnecessary escalation in force that resulted in Mykel's injuries and subsequent death. The Defendant City of Chattanooga's liability for the actions of their officers is a question for a jury to decide and as such this claim should not be dismissed.

### G. Plaintiff is the most proper person to bring suit

The Plaintiff is the mother of the Decedent, Mykel Jenkins. Mykel did not have a spouse and did not have any natural born children. As such, his mother is Mykel's surviving closest next of kin who is capable of bringing this suit. According to Tennessee Code Annotated § 20-5-106, the right of action of the decedent shall pass to their next of kin or spouse upon their death for the benefit of the person's spouse or next of kin. Defendant is arguing that Isabel Jenkins, the

Decedent's mother, is not the proper person to bring this suit as she did not have any legal custody over him at the time of his death and has not opened an estate in his name in the wake of his death. Plaintiff would insist that as Mykel Jenkins did not have a spouse or children, his mother is the person who has the greatest level of kinship to Mykel at this time. Plaintiff would argue that this matter should not be dismissed as Isabel Jenkins is the most proper person to bring this suit as the person who is the next of kin to Mykel Jenkins.

## CONCLUSION

Plaintiff has put sufficient evidence into the record that the City of Chattanooga has liability that can reasonably be attributed to it in this matter and that is a question for jury to decide. Plaintiffs has additionally put sufficient evidence into the record that the City of Chattanooga, as the supervisors and employers of the officers on scene at the residence and involved in this incident, have attributable liability on the claims of Assault and Battery, Wrongful Death, and Negligence and as such the immunity of the Governmental entity is removed under the GTLA. Therefore, summary judgment is not appropriate because the facts and reasonable inferences from those facts would not permit a reasonable person to reach only one conclusion as suggested by Defendant's. The Defendant has failed to carry its burden and summary judgment should be denied regarding the claim made by the Plaintiff. Plaintiff is entitled to pursue an action in this case and receive any damages following such a claim.

**WHEREFORE** these premises considered, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be dismissed.

Dated: November 1, 2023

Respectfully submitted,

/s/ Corissa Davis_____
Corissa M. Davis, (BPR 40245)
Robert Floyd Davis, (BPR #30129)
Davis, Kessler & Davis
433 Cherokee Blvd.
Chattanooga, TN 37405
(423) 267-7000
*Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and exact copy of the foregoing document has been served by placing a true and exact copy of said document in the United States Mail, Fax, or Email, addressed to said person listed below, with sufficient postage thereupon to carry the same to its destination.

PHILLIP A. NOBLETT – BPR #10074
Deputy City Attorney
KATHRYN C. MCDONALD – BPR #30950
DAVID W. SCHMIDT – BPR #26016
Assistant City Attorneys
100 East 11th Street, Suite 200
Chattanooga, Tennessee 37402
(423) 643-8250 - Telephone
(423) 643-8255 - Fax
Attorneys for Defendants

    This the _____ day of _____, 2023.

/s/ Corissa Davis_____
Corissa M. Davis