UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| ISABEL TERESA FERNANDEZ JENKINS, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| CITY OF CHATTANOOGA, *et al.*, | ) ) |
| Defendants. | ) |

1:22-CV-00069-DCLC-CHS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Isabel Teresa Fernandez Jenkins ("Ms. Jenkins") brought this lawsuit as next of kin of her son, Mykel Jenkins ("Mykel"), against the City of Chattanooga (the "City"), the Chattanooga Police Department ("CPD"), and four John Doe police officers following the fatal shooting of Mykel on March 19, 2021 [Doc. 1, ¶¶ 10–12, 28–29]. Ms. Jenkins asserts claims for excessive force and municipal liability under 42 U.S.C. § 1983 [*Id.*, ¶¶ 30–36] (Counts I and II) as well as state law claims for assault and battery, negligence, wrongful death, and survival [*Id.*, ¶¶ 37–55] (Counts III through VII). Defendants now move for summary judgment [Doc. 29]. The motion is fully briefed and ripe for resolution.[1] For the reasons stated below, Defendants' motion [Doc. 29] is **GRANTED**. Ms. Jenkins' claims under § 1983 [Counts I and II, Doc. 1, ¶¶ 30–36] are **DISMISSED WITH PREJUDICE**. Ms. Jenkins' state law claims [Counts III through VII, Doc. 1, ¶¶ 37–55] are **DISMISSED WITHOUT PREJUDICE**.

---

[1] Plaintiff filed two Responses to Defendants' motion [Docs. 35, 36]. The first-filed response attaches an expert report regarding force used against an individual who is not involved in this lawsuit [*See* Doc. 35-1]. The second includes an expert report concerning Mykel Jenkins [*See* Doc. 36-1]. Accordingly, the Court considers the second response.

1

I.  BACKGROUND

On the morning of March 19, 2021, Ms. Jenkins called the police to report a disturbance in her home [Doc. 36, pg. 1, ¶¶ 1–2].  CPD Officers Brian Blumenberg and Blake Martin initially responded [Doc. 36, pg. 2, ¶ 4].  When they arrived, they found Mykel, who Ms. Jenkins informed them was not supposed to be there, sitting in a bedroom at the end of the hall [Doc. 36, pgs. 2–3, ¶¶ 5, 9; Doc. 32, 3. Martin_-_Axon_Body_Video_2021-3-19_1023_(1) ("Martin Video"), 0:55].

Body camera footage shows Mykel sitting on the bed, fidgeting with various objects and making repeated, erratic movements [Martin Video, 2:30–6:12].  Officers asked him multiple times about taking him somewhere to "get [him] some help," and though he initially indicated he might go to "County," his later responses were either nonsense or deflective [Martin Video, 4:15–5:57].  At some point, Officer Martin asked him whether he had taken something that had "messed [him] up" because "beer is not going to mess you up like that" [Martin Video, 6:43–7:12].  Mykel continued to pace about the room twirling beer cans and other objects in his hands [Martin Video, 7:12–7:46].  He denied taking "anything illegal" [Martin Video, 7:12–7:46].  At some point he muttered something unintelligible, and when asked to repeat himself stated "Can't get me . . . either one by his self, you hear me? I know he can't by his self.  Better get two of 'em, you hear me?" [Doc. 32, 2. Blumenberg_-_Axon_Body_3_Video_2021-03-19-1023_(23),  ("Blumenberg Video"), 11:35–12:04].  He continued making incoherent comments and noises and pacing around the room [Blumenberg Video, 12:04–14:13].  Officers concluded "he's gonna want to fight," but made no move to secure him at that time [Blumenberg Video, 14:00–14:23].

Instead, the officers called for backup and waited in the living room with Ms. Jenkins [Blumenberg Video, 14:23–14:48].  She explained Mykel had friends who would give him drugs [Blumenberg Video, 17:24–17:47].  During this time, footage shows Mykel pacing between

2

bedrooms at the end of the hall [Blumenberg Video, 16:19–19:42]. Officers determined Mykel had violated a temporary protective order and, once backup arrived, proceeded back down the hall toward the bedrooms [Martin Video, 19:10–20:17; Blumenberg Video 19:14–20:14]. They again asked him to come with them to "get [him] some help" [Blumenberg Video, 20:19–20:46].

Mykel then picked up a small, pointed object from a dresser and ignored repeated requests to put it down [Blumenberg Video, 21:19–21:58]. He stated to one of the officers, "left eye, right eye, both of 'em. I'll get 'em both" [Blumenberg Video, 23:06–23:30]. Officers again instructed him to put the object down [Blumenberg Video, 23:39–23:56]. When he refused, Officer Blumenberg drew his taser and discharged it, commanding Mykel to get on the ground [Blumenberg Video, 24:03–24:19]. Mykel instead flailed his arms and advanced on the officers with the object still in his hand [Blumenberg Video, 24:19–24:22]. During the ensuing altercation, Officer Blumenberg drew his service pistol and shot Mykel a total of six times [Blumenberg Video, 24:22–24:47; *see* Doc. 29-4, pgs. 1–2]. He died as a result [*See* Doc. 29-4, pg. 1]. Ms. Jenkins sued, and Defendants filed the present motion [Doc. 29].

## II.  LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court must generally view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a

3

Case 1:22-cv-00069-DCLC-CHS   Document 41   Filed 11/29/23   Page 3 of 7   PageID #: 2076

genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Id*.

## III. DISCUSSION

Defendants assert that (1) all claims against the John Doe defendants should be dismissed due to the failure to name and serve them within the one-year statute of limitations; (2) all claims against the CPD should be dismissed because it is not a proper party to the lawsuit; (3) Plaintiff has failed to establish municipal liability against the City; and (4) the state law claims fail on the merits or, in the alternative, the Court should decline to exercise supplemental jurisdiction [Doc. 30, pgs. 5–19]. Ms. Jenkins concedes to the dismissal of the John Doe defendants and the CPD but asserts that genuine disputes of material fact remain as to her claim of municipal liability against the City and each of the state law claims [Doc. 36, pgs. 7–19]. Each claim is examined in turn, beginning with municipal liability.

### A. Municipal Liability under Section 1983

To establish municipal liability, a plaintiff must show "that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's constitutional rights." *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 573 (6th Cir. 2016) (quoting *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007)). Here, even if a constitutional violation did occur, Ms. Jenkins fails to show a policy or custom of the City was the moving force behind the violation.

A plaintiff can show an illegal policy or custom based on: (1) "an illegal official policy or legislative enactment," (2) "ratif[ication]" of illegal conduct by "an official with final decision making authority," (3) "a policy of inadequate training or supervision," or (4) "a custom of

4

tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Ms. Jenkins seeks to establish the existence of a policy or custom under the third and fourth theories: failure to train and a custom of tolerance [*See* Doc. 36, pgs. 11–13]. Both are examined in turn.

1. **Failure to Train**

Ms. Jenkins alleges the City failed to train its officers to handle a situation like the one they faced when they confronted Mykel [Doc. 36, pg. 11]. "To succeed on an inadequate training claim, a plaintiff must prove: (1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [municipality's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Stewart v. City of Memphis*, 788 F. App'x 341, 346 (6th Cir. 2019) (quoting *Roell v. Hamilton Cty., Ohio/Hamilton Cty. Bd. of Cty. Commissioners*, 870 F.3d 471, 487 (6th Cir. 2017)) (internal quotation marks omitted).

Here, it is undisputed that the City trains its officers on securing suspects in a state of excited delirium and de-escalation [Doc. 36, pg. 11; Doc. 29-14, ¶¶ 5–6]. Ms. Jenkins contends the officers failed to secure Mykel while he was in an excited state and failed to appropriately de-escalate, which shows that their training was inadequate [Doc. 36, pgs. 11–12]. However, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Stewart*, 788 F. App'x at 346 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989)). Thus, the officers' alleged policy violations, without more, are insufficient to establish

5

municipal liability.[2]

## 2. Custom of Tolerance

Ms. Jenkins also argues the City had a custom of allowing officers to disregard policy [Doc. 36, pg. 12]. A custom-of-tolerance claim requires "(1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the 'moving force' or direct causal link in the constitutional deprivation." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Doe v. Claiborne Cnty. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996)); *see also Burgess*, 735 F.3d at 478–79 (rejecting a custom-of-tolerance claim where the plaintiff failed to show any prior instance of failing to investigate excessive-force claims).

Here, Ms. Jenkins asserts the City has a custom of tolerating deviations from policy because when officers confronted Mykel, they failed to follow policies for de-escalation and securing individuals in a state of excited delirium [Doc. 36, pg. 12]. But Ms. Jenkins points to no facts showing that officers' purported disregard of policy on that day was part of a "clear and persistent pattern" or that the City was on notice of such a pattern. She points to no prior instances where officers have disregarded these policies [*See* Doc. 36, pg. 12]. Accordingly, she fails to show a genuine dispute of material fact exists on her custom-of-tolerance claim.

In sum, Ms. Jenkins fails to put forth any viable theory for holding the City liable under §

---

[2] Ms. Jenkins points to the report of her expert, Dr. John Daniel, to show officers failed to heed their training [Doc. 36, pg. 11; *see* Doc. 36-1]. Dr. Daniel opines that officers' "training was disregarded" in their confrontation with Mykel [Doc. 36-1, pg. 3]. He asserts officers in fact used excessive force [*Id.*, pg. 4]. But he does not claim that the Department's training was inadequate [*See id.*, pgs. 2–5]. Thus, his report fails to support Ms. Jenkins' failure-to-train theory.

6

1983. Accordingly, the § 1983 claims against the City are **DISMISSED WITH PREJUDICE**.

### B. State Law Claims

That leaves Ms. Jenkins' claims under state law [Counts III–VII, Doc. 1, ¶¶ 37–55]. The Court has supplemental jurisdiction over these claims because "they form part of the same case or controversy" as the § 1983 claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(a). The Court may, nonetheless, decline to exercise supplemental jurisdiction over a claim when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Considering the disposition of Ms. Jenkins' § 1983 claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

### IV. CONCLUSION

Accordingly, for the reasons stated herein, Defendants' Motion for Summary Judgment [Doc. 29] is **GRANTED**. Ms. Jenkins' claims under § 1983 [Counts I and II, Doc. 1, ¶¶ 30–36] are **DISMISSED WITH PREJUDICE**. Ms. Jenkins' state law claims [Counts III through VII, Doc. 1, ¶¶ 37–55] are **DISMISSED WITHOUT PREJUDICE**. Defendants' Motion for Change of Venue [Doc. 38] is **DENIED AS MOOT**.

A separate judgment shall enter.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge